WILLIAM REED, Plaintiff-Appellant, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—08—3544

Opinion filed October 19, 2009.—Rehearing denied November 10, 2009.

Martin O. Holland, of Evergreen Park, for appellant.

Vincent D. Pinelli and Blanca R. Dominguez, both of Burke, Burns & Pinelli, Ltd., of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

William Reed, a firefighter with the Chicago Fire Department (CFD), appeals an order affirming the decision of the Retirement Board of the Firemen's Annuity and Benefit Fund of Chicago (Board) denying his claim for ordinary disability benefits. Reed initially sought duty disability benefits after he was injured on the job on June 2, 2000; that claim was denied by the Board on February 20, 2002. Reed did not appeal; instead, he sought immediate reinstatement as a firefighter. The CFD denied reinstatement because Reed was "unable to perform essential functions of the duties of a Firefighter," according to a letter from the chief of personnel. On April 26, 2004, Reed was reinstated to the CFD. Before his reinstatement, Reed filed the present claim for ordinary disability benefits for the period he was not on the CFD payroll. The Board, with only five of eight members present, denied the claim for ordinary disability. Judge James R. Epstein affirmed the Board's decision on administrative review.

Because it is inescapable that the same injury Reed sustained in 2000 is the triggering "cause" in his application for ordinary disability benefits under section 6—152 of Article 6 of the Illinois Pension Code (40 ILCS 5/6—152 (West 2006)), his claim is foreclosed as a matter of law by the Board's February 20, 2002, decision finding he was not disabled. We affirm the Board.

## BACKGROUND

Reed won the right to file his claim for ordinary disability benefits in *Reed v. Retirement Board of the Fireman's Annuity & Benefit Fund*, 376 Ill. App. 3d 259, 876 N.E.2d 94 (2007) (*Reed I*). We set out the following pertinent facts and procedural history of the case from our decision in *Reed I*.

William Reed became a CFD firefighter in 1990. On June 2, 2000, Reed was injured when his stationary fire truck was struck from the rear by a car. Reed subsequently received one year of paid medical leave. On April 5, 2001, he filed an application for duty disability benefits before the Board under Article 6 of the Pension Code (40 ILCS 5/6—151 (West 2006)). The Board heard testimony from several doctors concerning Reed's condition during the hearing on Reed's claim. On February 20, 2002, the Board entered an order finding Reed's ability to perform his firefighting duties was not impaired such that he was "disabled" under the Code, resulting in the denial of his claim for duty disability benefits. The order noted that Reed's condition was "essentially normal[, which] would allow him to return to ac-

tive duty" with the CFD. Reed did not seek administrative review of the denial of his claim.

On March 12, 2002, Reed sent a letter seeking reinstatement to Dr. Hugh Russell, the medical director at the CFD. After Reed underwent a series of functional capacity examinations (FCEs) designed to measure his ability to return to work, Dr. Russell recommended that Reed be denied reinstatement. On April 8, 2003, Charles Stewart, chief of personnel for the CFD, sent Reed a letter denying his reinstatement because he was "unable to perform essential functions of the duties of a Firefighter."

On May 9, 2003, Reed filed a two-count complaint against the City of Chicago and the Board. Count I sought administrative review of the Board's February 20, 2002, order denying him duty disability benefits. Count II sought a writ of *mandamus* commanding the City to reinstate him to the CFD or, in the alternative, commanding the Board to provide him with duty disability benefits. On the Board's motion, the circuit court dismissed Reed's original complaint on January 16, 2004, based on Reed's failure to seek administrative review within 35 days of the Board's February 20, 2002, order. Reed filed a timely motion to reconsider.

While his motion to reconsider was pending, Reed requested on January 20, 2004, an ordinary disability benefits hearing before the Board; the Board denied the request. Meanwhile, the CFD reversed its earlier decision and reinstated Reed as a fireman on April 26, 2004. Thereafter, the City was dismissed as a party on May 20, 2004. In the dismissal order, the circuit court noted that "the City is not bound by the Board's factual determination that supported its finding that [Reed] was not entitled to a duty disability." On July 29, 2004, the circuit court denied Reed's pending motion to reconsider, but granted Reed leave to file an amended complaint.

Reed amended his complaint on August 31, 2004, to a petition for a writ of *mandamus* commanding the Board to grant an ordinary disability benefits hearing. The circuit court granted summary judgment to the Board; on appeal, we reversed and remanded to the circuit court. We did so on very limited grounds.

"While there was no genuine issue of material fact before the trial court, we find that summary judgment in favor of the Board was erroneously entered because Reed's amended complaint raised a legal issue as to whether, in refusing Reed's request to apply for ordinary disability benefits, the Board violated his procedural due process rights. We further find that, in fact, Reed was entitled to summary judgment on this basis." *Reed I*, 376 Ill. App. 3d at 264.

We expressly directed that summary judgment be entered in favor of Reed because the Board "should have allowed Reed to *file* an application for ordinary disability benefits[; however,] we pass[ed] no judgment on whether, once that application was tendered, the Board would be justified in denying Reed a hearing on the issue of ordinary disability benefits." (Emphasis added.) *Reed I*, 376 Ill. App. 3d at 266. In accordance with our decision, Reed filed an application for ordinary disability benefits, covering the period between June 2001, when his paid medical leave ended, and April 2004, when he was reinstated to the CFD.

On May 21, 2008, following a hearing, the Board, with five members present to constitute a quorum, voted to deny Reed's claim for ordinary disability benefits. Reed filed a timely complaint for administrative review of the Board's denial. Judge Epstein affirmed the Board's decision. Reed timely appeals.

## ANALYSIS

Though Reed raises in his brief seven "issues presented for review," we conclude that the issues are properly consolidated into two dispositive issues. First, whether the Board erred in denying his application for ordinary disability benefits. Second, whether the five-member Board that denied his application impinged upon his due process rights.

Under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)), we review the decision of the administrative agency, not the decision of the circuit court. *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 515, 840 N.E.2d 785 (2005). Where only a question of law is presented on appeal, our review is *de novo. Dowrick*, 362 Ill. App. 3d at 515. Much as we did in *Reed I*, we conclude that the instant appeal raises only legal issues. *Reed I*, 376 Ill. App. 3d at 264 (no genuine issue of material fact presented, but amended complaint raised a legal issue). In fact, we conclude that the first contention Reed raises here is essentially the same contention he made in *Reed I*.

## Denial of Ordinary Disability Benefits

In *Reed I*, Reed argued that it was unfair "that he was denied disability benefits when the Board found that he was not disabled but was subsequently denied reinstatement when the CFD found that he was not fit for duty." *Reed I*, 376 Ill. App. 3d at 269. We rejected Reed's argument by quoting at length from the decision in *Dowrick*:

> " 'Given the compelling public interest in ensuring the fitness of firefighters to perform their duties, it is reasonable to conclude that the General Assembly deliberately set the bar lower for a municipality seeking to discharge an unfit firefighter than for a

firefighter to obtain a disability pension, and committed the decisions to separate agencies with different missions.' " *Reed I*, 376 Ill. App. 3d at 269, quoting *Dowrick*, 362 Ill. App. 3d at 521.

While *Dowrick* addressed the discharge of a firefighter, rather than a denial of reinstatement, the reasoning in *Dowrick* applies with equal force here. *Dowrick*, 362 Ill. App. 3d at 521. It is not incongruous (or unfair) that a firefighter is denied a disability pension because he is "essentially normal" and can return to active duty, as the Board determined here, while he is denied reinstatement by the CFD because he is "unable to perform" the essential duties of a firefighter. See *Dowrick*, 362 Ill. App. 3d at 521. The answer to why the same firefighter may be treated differently by different agencies lies in the different interests at stake in reinstating (or firing) a firefighter and in deciding whether a firefighter is disabled for pension purposes. See *Dowrick*, 362 Ill. App. 3d at 520 (a municipality's "interest in ensuring the fitness of its firefighters may often diverge from the interests of the participants and beneficiaries of a pension fund in ensuring that the funds are not depleted by dubious claims"). In effect, there is a higher bar for an administrative finding of disability than for a finding that a former fighter is unfit for reinstatement. See *Dowrick*, 362 Ill. App. 3d at 521 (the different missions of separate agencies may result in seemingly conflicting decisions).

As the basis for his ordinary disability claim, Reed asserts in his main brief that he "was disabled for 34 months from June 21, 2001 to April 26, 2004." It appears Reed claims that he remained disabled until he successfully passed "a battery of medical tests at U.S. Occupational Health," which Dr. Russell determined meant Reed was finally "pain free," resulting in the approval of "Reed's rehire on April 26, 2004," by the fire commissioner. Until his rehire, Reed argues he remained disabled, entitling him to ordinary disability benefits supported by "the opinion of the City's Medical Director, Dr. Russell." Reed insists that "the objective and definite medical opinions of Dr. Russell, Medical Director of the Chicago Fire Department," cannot be ignored by the Board, and, in fact, Dr. Russell's medical opinion compels a finding of ordinary disability. In Reed's words, "Otherwise, the Board's interpretation of the Pension Code term, disability, is absurd and not supported by the language of the fireman's Pension Code." We decline to address Reed's argument regarding the meaning of disability by the Board as contrasted with the CFD's.

Rather, we determine that the dispositive issue before us is whether Reed was entitled to a disability hearing on the merits based on Reed's application for ordinary disability benefits, which *Reed I* held he was entitled to file. As we noted in our decision in *Reed I*, "the

Board [might well] be justified in denying Reed a hearing on the issue of ordinary disability benefits." *Reed I*, 376 Ill. App. 3d at 266.

We now expressly hold that which we only intimated in *Reed I*: Reed was not entitled to a disability hearing on the issue of ordinary disability benefits, where his application for benefits is inescapably based on the very same injury he sustained in 2000. As we noted in *Reed I*:

> "[T]he doctrine of collateral estoppel *** bar[s] Reed's ordinary disability claim if Reed relies on his June 2, 2000, injury in his application for an ordinary disability benefits hearing because the Board has already determined that Reed was not left disabled as a result of that injury. [Citation.] This is especially true [because] *** the standard for proving disability is the same for both duty and ordinary disability benefits." *Reed I*, 376 Ill. App. 3d at 266-67.

For collateral estoppel to apply between the same parties with a final judgment having issued, the issue decided by the Board in its decision of February 21, 2002, must be " 'identical to that presented in the current action.' " *Dowrick*, 362 Ill. App. 3d at 516, quoting *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 723, 776 N.E.2d 730 (2002). In an effort to avoid the collateral estoppel bar, Reed argues that he has not alleged that his ordinary disability was caused by the accident in June 2000. Reed contends that his ordinary disability benefits claim is based on the "general state of pain in the cervical/shoulder area." The facts, however, are not so vague.

Reed is seeking ordinary disability benefits as of June 2001. June 2001 coincides with the end of Reed's one-year medical leave he received following the June 2, 2000, accident. Under section 6—152 of the Pension Code, the effective date for ordinary disability benefits does not begin until "after the first 30 days of disability" as the result of any cause. 40 ILCS 5/6—152 (West 2006). Consequently, the June 2001 effective date for Reed's ordinary disability benefits claim means that his disability began 30 days prior, which falls within his medical leave period. In his application for benefits, Reed contends that "[o]n or about June 2, 2001, [he] was forced off the CFD payroll because [he] was disabled and incapable of being an active firefighter." The only cause that could possibly trigger an ordinary disability benefits claim based on the record before us is the June 2, 2000, accident. The medical opinions upon which Reed relies all relate back to the accident in 2000. Reed is disingenuous to contend otherwise.

The dilemma in which Reed finds himself here is precisely the one he complained of in *Reed I*. Once again, we conclude it is neither unfair nor incongruous that the greater interest of the public means

that a firefighter that is determined to be unable to do the "very heavy" category of work required for reinstatement, as determined by the functional capacity examinations demanded by the CFD, may also be determined not to be "disabled" under the Pension Code, in order to ensure that pension funds are provided to only those truly disabled. See *Buttitta v. City of Chicago*, 9 F.3d 1198, 1204 (7th Cir. 1993) (under an analogous section of the Pension Code concerning police officers, the police department is not obliged "either to accept the [Pension] Board's conclusion that the disability has ceased or to immediately place the officer on active duty"). As we explained above, and as the circuit court expressed in its ruling, "the City is not bound by the Board's factual determination that supported its finding that [Reed] was not entitled to duty disability."

Based on our *de novo* review, we have no doubt that Reed's ordinary disability benefits claim is foreclosed by collateral estoppel. While collateral estoppel is not the basis for the Board's denial of Reed's application for ordinary disability benefits, this ground to affirm the Board's decision is apparent from the record. *Chicago Title & Trust Co. v. Village of Inverness*, 315 Ill. App. 3d 1100, 1107, 735 N.E.2d 686 (2000), citing *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 457 N.E.2d 9 (1983).

In *Reed I*, we noted that the Board should have allowed Reed to file his claim for ordinary disability benefits. In so ruling, we analogized Reed's efforts to a litigant seeking to file a complaint with the clerk of the circuit court even though he "has already filed an earlier claim based on the same cause of action." *Reed I*, 376 Ill. App. 3d at 265. We noted, however, that such a filing by a litigant might be for naught as "the complaint might later be dismissed." *Reed I*, 376 Ill. App. 3d at 265. We emphasized that "the Board perhaps could dismiss the application" after fully evaluating it because "the doctrine of collateral estoppel may bar Reed's ordinary disability claim." *Reed I*, 376 Ill. App. 3d at 265-66. Today, we complete our analogy in *Reed I*: a complaint filed as a matter of right may nonetheless be subject to dismissal if it duplicates an earlier claim that ended in an adverse final judgment.

We hold as a matter of law that Reed's claim for ordinary disability benefits is precluded by the doctrine of collateral estoppel based on the Board's February 20, 2002, decision finding Reed was not disabled.

## Five-Member Board

Reed also challenges the Board's decision as violating his due process rights because it was rendered by only five members rather

than the "full Board of eight trustees." Under section 6—178 of the Code (40 ILCS 5/6—178 (West 2006)), the presence of five members of the Board constitutes a quorum, sufficient to transact business. Reed offers no authority for his claim that the eight-member Board should have considered his ordinary disability application, and we are aware of none. Absent such authority, we summarily reject Reed's contention. See 210 Ill. 2d R. 341(h)(7) ("Points not argued are waived ***").

## CONCLUSION

Following the accident on June 2, 2000, Reed's application for duty disability benefits was duly considered by the Board, culminating in its decision of February 20, 2002, denying his claim. When Reed did not seek administrative review of the Board's decision, the decision constituted a final judgment on the issue of disability. Reed's subsequent efforts to seek an adjudication of his claim for ordinary disability benefits was foreclosed by the February 20, 2002, decision because the standard for finding disability is the same for ordinary and duty disability. Reed is collaterally estopped from relitigating the issue of his disability. His ordinary disability benefits claim fails as a matter of law. The decision issued by a quorum of the Board did not impinge upon Reed's due process rights. We affirm the Board's decision denying his claim.

Affirmed.

PATTI and LAMPKIN, JJ., concur.